(December 23, 1897.)

## BROSE v. BOISE CITY RAILWAY AND TERMINAL CO.

[51 Pac. 753.]

TITLE TO REAL ESTATE—AMBIGUITY IN DEED.—If a direction or course given in a deed is impossible or senseless, it must be omitted or disregarded. And if the other calls or parts of the description are sufficient to identify the land conveyed, the deed must be sustained.

TITLE BY PRESCRIPTION—ADVERSE POSSESSION—PAYMENT OF TAXES.— Adverse possession could be established under the laws of this territory prior to May 21, 1881, without proving payment of taxes. Section 150 of the Code of Civil Procedure (see 10th Sess. Laws 1881, p. 29) made it necessary, in order to establish adverse possession, to prove the payment of taxes.

(Syllabus by the court.)

APPEAL from District Court, Ada County.

Wyman & Wyman, for Appellant (Selden B. Kingsbury, of Counsel).

The deed from Slater to Curtis is dated February 4, 1869, and is recorded in book 3 of Deeds, at page 432, Ada county records. This was executed seven months prior to the deed to Slater by Davis and is also a quitclaim deed, except it contains, after the usual granting clause, the words, "present and prospective" and after the description the further words, "Relinquishing, etc., all and every claim, both in law and in equity, I have now or may acquire by reason of my pre-emption right or entry of any portion thereof and to any part or parcel of said above-described land, which may be embraced, included or covered by any patent I, or my successors, may obtain for said land and premises." This shows that at that time Slater expected to acquire the legal title to the whole of this tract described in this deed, to which he had at that time some claim of right, and does not limit it to the portion acquired under his patent and pre-emption right, but he intended that any after-acquired title from any source should vest at once in Curtis, and such is its legal effect. (*Clark v. Baker,* 14 Cal. 629, 76 Am. Dec. 449; 3 Washburn on Real Property, 5th ed., 114; *Phelps v. Kellogg,* 15 Ill. 137; Rawle on Covenant for Title, 407; Idaho Rev. Stats., secs. 2927, 2928.) If sufficient remains after rejecting a part of the description which is false the deed will take effect. (Devlin on Deeds, sec. 1016, p. 329, sec. 1038, p. 355; *Reamer v. Nesmith,* 34 Cal. 624.) If there is a conflict between the monuments and courses and distances, the latter must yield. (*Newson v. Pryor's Heirs,* 7 Wheat. 7.) The calls north, northerly, etc., must give way to any other description of a line which makes its location reasonably certain. (Devlin on Deeds, sec. 1035; *Colton v. Seavey,* 22 Cal. 502, 503.) And a street is a certain and definite call, and if the direction given is senseless it should be omitted. (*Faris v. Phelan,* 39 Cal. 613; *Kruse v. Wilson,* 79 Ill. 233.) The reservation of the Curtis tract in the Slater deed to Miller describes it by reference to the date of the conveyance and book and page of the record thereof. This reference to the prior deed is a sufficient description. (Tyler on Law of Boun

etc., 132.) The construction put upon the deed by the parties themselves is entitled to great weight. Curtis went into possession of a tract, including that in dispute, under his deed, and each grantee did the same, and for twenty-one years their possession was undisturbed by word or deed, and it should not be disturbed now. (*Mulford v. Le Franc,* 26 Cal. 88; *Stone v. Clark,* 1 Met. 378, 35 Am. Dec. 370, and note; *Haring v. Van Houten,* 22 N. J. L. 61; Devlin on Deeds, 851.) And a deed is not void because from lapse of time it is impossible to identify the land embraced in it; its identity can be identified by common reputation. (*Nixon v. Porter,* 34 Miss. 697, 69 Am. Dec. 408.) Extrinsic evidence is always admissible to identify and establish the calls in a deed. (*Abbott v. Abbott,* 53 Me. 356; *Lane v. Thompson,* 43 N. H. 320.) Lemp entered upon the whole tract described in his deed from Curtis, under both "claim" and "color" of title, January 4, 1872, and this included the tract in dispute. (*Hall v. Law,* 102 U. S. 466; *Tryon v. Huntoon,* 67 Cal. 328, 7 Pac. 741.) His title on January 4, 1877, became a vested right in fee simple, which the legislature could not take away by change in the requirements of adverse possession. (Sutherland on Statutory Construction, sec. 480; *Johnson v. Brown,* 63 Cal. 391.) The statute of limitations began to run against plaintiff October 5, 1869, the date of the Davis patent. (*Le Roy v. Rogers,* 30 Cal. 230, 236; *Webber v. Clarke,* 74 Cal. 19, 15 Pac. 431.) And plaintiff was barred by section 4037 of the Revised Statutes of Idaho, October 5, 1874, even though it be held that the Curtis deed was void. (*Leffingwell v. Warren,* 2 Black (U. S.), 603, 605; *Tryon v. Huntoon,* 67 Cal. 328, 7 Pac. 741.) As plaintiff has failed to show any title to the property in himself, or any right of possession, this appeal being from the judgment as well as order overruling the motion for new trial, the judgment should be reversed, with instruction to the court below to enter judgment in favor of the defendant. (*McAuliff v. Parker,* 10 Wash. 141, 38 Pac. 744; *Woodward v. Faris,* 109 Cal. 12, 41 Pac. 781.) The fact that the land was misdescribed in the proceedings for its sale and administrator's deed not interfere with the operation of the statute of limitations. The statute applies to just such defective sales as this;

if the sale had been valid and effective, the defendant would have had no use for the statute. (*Bay v. Posner,* 78 Md. 42, 26 Atl. 1084; *Grim v. Curley,* 43 Cal. 250; *Michigan L. & I. Co. v. Thoney,* 89 Mich. 226, 50 N. W. 845; *Black v. Tennessee C. & I. R. R. Co.,* 93 Ala. 109, 9 South. 537; *Black v. Pratt Coke Co.,* 85 Ala. 504, 5 South. 89; *Moore v. Wiley,* 44 Kan. 736, 25 Pac. 200; *Brown v. Morgan,* 44 Minn. 432, 46 N. W. 913; *Gee v. Clark,* 42 La. 918, 8 South. 627; *Vandall v. St. Martin,* 42 Minn. 163, 44 N. W. 525; *Hebard v. Scott,* 95 Tenn. 467, 32 S. W. 390; *Ocean Beach Assn. v. Yard,* 48 N. J. Eq. 72, 20 Atl. 763.) When the plaintiff in ejectment introduces a deed containing an exception, the burden is on him to show that the land in question is not included within the exception. (*Reusens v. Lawson,* 91 Va. 226, 21 S. E. 347, 348, 356; *Maxwell Land Grant Co. v. Dawson,* 151 U. S. 586, 14 Sup. Ct. Rep. 458; *Hawkins v. Barney's Lessee,* 5 Pet. 457; *Taylor v. Taylor,* 3 A. K. Marsh. 18; *Guthrie v. Lewis,* 1 T. B. Mon. 142.)

N. M. Ruick, for Respondent.

The quitclaim deed of Davis to Slater passed all the title and estate of the former to the land described therein as effectually as a deed with full covenants. (*McConnel v. Reed,* 4 Scam. 117, 121, 38 Am. Dec. 124, 126, 130, note; *Hamilton v. Doolittle,* 37 Ill. 478, 482; *Kyle v. Kavanagh,* 103 Mass. 356, 359, 4 Am. Rep. 560; *Carpentier v. Williamson,* 25 Cal. 154, 169; *Graff v. Middleton,* 43 Cal. 341, 343, 344.) And takes effect by relation back to the final certificate or "grant." (*Thompson v. Spencer,* 50 Cal. 532, 533.) The description of the premises conveyed must be sufficiently definite and certain to enable the land to be identified; otherwise it will be void for uncertainty. (Devlin on Deeds, sec. 1010, and authorities cited in note; *People v. Klumpke,* 41 Cal. 263, 278.) Parol evidence not admissible to explain a description insufficient on its face. (Devlin on Deeds, sec. 1010; *Brandon v. Leddy,* 67 Cal. 43, 44, 7 Pac. 33; 1 Am. & Eng. Ency. of Law, p. 529, tit. "Ambiguity.") If defendant's grantors, or the persons whom defendant claims to have held the land adversely, did not "enter into possession of the property under claim of title . . . . founding such claim

upon a written instrument," etc., such possession could not be extended beyond the *possessio pedis* which is definite, positive and notorious. (Idaho Rev. Stats., sec. 4042; *Core v. Faupel,* 24 W. Va. 238, 245.) Brose purchased the tract in dispute from Miller in December, 1890, and in January, 1891, entered into possession and began improvements. Thus was the possession, if any, of the defendant's grantors interrupted, and the continuity broken by entry on the part of the rightful owner. An interruption of the possession, but for a day, even by force or fraud, will stop the statute of limitation running—which begins anew to run from the day, only, of a re-entry. (*Olwine v. Holman,* 23 Pa. St. 279, 284; *San Francisco v. Fulde,* 37 Cal. 349, 352, 99 Am. Dec. 278; *City of San Jose v. Trimble,* 41 Cal. 536, 543; *Sherin v. Brackett,* 36 Minn. 152, 30 N. W. 551.)

SULLIVAN, C. J.—This is an action in ejectment. It is alleged in the complaint that on the twentieth day of December, 1890, the plaintiff (who is the respondent here), was the owner and seised in fee of the premises described in the complaint, and alleged ouster by the appellant, the Boise City Railway and Terminal Company, a corporation, on or about the twentieth day of May, 1893. The answer specifically denied the allegations of the complaint, except, however, it admitted that it was in possession of the premises, but alleged that its possession was lawful, and also set up as a further defense the statute of limitations. By supplemental answer it averred that since the commencement of the action it had acquired title to the premises, and was the owner and entitled to the possession thereof. Upon the issues thus made, the cause was tried by the court and a jury, and a verdict was rendered in favor of the plaintiff, and judgment entered thereon. Appellant's motion for a new trial was denied, and this appeal is from the judgment and order denying the motion for a new trial.

It appears from the transcript that one J. H. Slater settled upon unsurveyed lands of the United States, and filed a notice of the land so claimed by him with the recorder of Ada county, the county in which said land was situated. Said land claim notice was filed for record on March 24, 1866.

Thereafter one Thomas Davis filed his notice of land claim in the office of the recorder aforesaid, whereby he claimed a certain tract of land bordering or bounding the said Slater land claim on the easterly or southeasterly side. The land claim notice of said Davis was filed for record on May 3, 1867. One W. L. Thompson filed his land claim notice in the office of said recorder on April 5, 1865, whereby he claimed a certain tract of land bordering on the northwesterly side of a part of the said Slater land claim. It also appears that one John McClelland filed his land claim notice in the said recorder's office on April 5, 1865, whereby he claimed certain land bordering on the westerly side of the said Slater land claim.

The legislative assembly of the territory of Idaho, at its second session, passed an act entitled, "An act prescribing the mode of maintaining and defending possessory actions on the public lands in this territory." (See 2d Sess. Laws 1864, p. 421.) The second section of said act provides the maximum number of acres which each claim may contain, its form, and how the boundaries thereof shall be marked on the ground. The third section provides that such land claim shall be accurately described in a written notice, which notice shall be recorded in the office of the recorder of the county wherein such land claim is situated. The provisions of said act were incorporated into the Revised Statutes of 1887, sections 4552–4556, inclusive.

The government survey was extended over the lands included in said land claims in the month of November, 1867. Thereafter Slater, Davis, and Thompson adjusted their said land claims so as to make them conform to the lines of the public survey, by which adjustment said Slater secured lots 6 and 7 in section 10, township 3 north, range 2 east, of Boise meridian, and Davis secured lots 3, 4, 5, and 10 in said section 10, and said Thompson got lots 1 and 3 in section 9, and lot 8 and southwest quarter of the southeast quarter of section 4, said township and range. Thereafter said Davis entered said lots 3, 4, 5, and 10 under the pre-emption laws of the United States, and a United States patent was issued to him therefor, which patent was received at the Boise City land office, December 23, 1869. Said Slater entered said lots 6 and

7 under the pre-emption laws of Congress, and a patent was issued to him therefor, which patent was received at the said land office on December 23, 1869. The said Thompson made pre-emption entry of certain land that fell to him by said adjustment, and the United States patent therefor was received at said land office, May 18, 1870. (The original claims we shall designate as "land claims," and, after their adjustment to the public survey, we shall designate them as "pre-emption claims.") Under said adjustment and pre-emption entry of Davis, he procured title under his said patent for a part of the land included within the original land claim of J. H. Slater, as shown by appellant's exhibit No. 16. Slater, under his said adjustment and pre-emption entry, procured title by his patent to a part of land included in the land claim of said Davis, and also to a part of the land covered by said lands claims of Thompson and McClelland. After final proof had been made under said pre-emption entries, Davis, by deed dated September 2, 1869, conveyed to J. H. Slater a triangular tract of land, particularly describing it by metes and bounds, it being a part of said lot 5, and included the land in dispute. It also appears that said Slater conveyed to said Davis a part of said lot 7, and also conveyed to said Thompson a part of said lot 6 by deed dated July 13, 1869. Said Slater also conveyed to McClelland a part of said lot 6, it being that part which was included in McClelland's land claim, as shown by respondent's exhibit No. 16. Thus, it is shown that, after said conveyances had been executed, each of said parties held the legal title to substantially the same land as was included in their several land claims, notices of which were filed in the office of the county recorder of said Ada county at the dates heretofore stated. If it be true that, shortly after said land claims had been adjusted to the public survey and entry thereof as pre-emption claims, each of said parties conveyed to the other or others such part or parts of his pre-emption entry as he had acquired from the other original land claims, by the adjustment aforesaid, it would at least indicate that they had entered into an agreement as now provided in such cases by the provisions of section 2274 of the Revised Statutes of the United States,

and had carried such agreement into effect by means of said conveyances.

Several maps or plats of the land in dispute in connection with other lands are before us, some of which were introduced by the appellant, and some by the respondent. Map No. 16, an exhibit of the appellant, purports to show the said land claims of Davis, Slater, Thompson, and McClelland, and their boundaries; also to show the boundaries of the said pre-emption claims. The said land claims of Davis and Slater, both before and after they were adjusted to the public survey, adjoined Front street, in Boise City, on the southwest side. Said street extends north, fifty-five degrees west, as shown by the certified plat of the government survey. And I think that as said street extends north, fifty-five degrees west, instead of east and west, that fact may have been the cause of certain directions or calls stated in the deeds hereinafter referred to being ambiguous and uncertain. Said plat also shows that the west boundary line of said lot 6, near the southwest corner thereof, was intersected by a fence at the time the government survey was made, in November, 1867. Said plat also shows that a public road intersected said boundary line a short distance north of said fence. It also appears that Boise river is not to exceed a quarter of a mile from the southwest corner of said lot, and across which river was a ferry known as "Thompson and McClelland's Ferry." McClelland, one of the owners of said ferry, testified on behalf of the respondent in this case as follows: "I have resided in Boise City thirty-two years and over. I am acquainted with what is known as Lover's Lane. It lies south and east of Boise City, near the intersection of Front street and Tenth, running southwest, as indicated on Map 16. Myself and Thompson owned what was known as Thompson and McClelland's Ferry. The road indicated on Map 16 as being Lover's Lane is the road known as the road to Thompson and McClelland's Ferry since 1864. My house is a little west of the end of Lover's Lane, next to the river. From the west of lot 6 my house is southwest, I think, about thirty or forty rods. One of the boundaries of my land very nearly intersects where Lover's Lane intersects the west line of lot 6. The next land to the north and east of mine is Thompson's.

At the boundary line between my land at that point on lot 6 and Thompson's is a fence. We made it ourselves, without any surveyor or anything, and agreed upon a line, about thirty-one or thirty-two years ago. It has remained the line ever since. A row of trees stands on Thompson's side, running very nearly northwest from Lover's Lane. The dotted line indicated upon Map 16 was the line agreed upon between Thompson and me. There was no surveying about it, and I don't know the bearings or anything of the kind." Cross-examination: "I am not a surveyor or civil engineer, and don't know where the west boundary line of lot 6 is located upon the ground. I have saw it surveyed from the corner of sections 3, 4, 9, and 10, fifty times out in that direction. I can't tell anything about the survey. It has been surveyed all through there." Said Map No. 16 shows that the road or street known as Lover's Lane opened into said Front street, opposite Tenth street, in Boise City, and crossed the northwesterly corner of said lot 5, cutting off from said lot the tract in dispute. In other words, all of lot 5 north of said Lover's Lane is included in the land in dispute, and consists of fifty-six one-hundredths of an acre.

Said Slater conveyed to one E. J. Curtis, by quitclaim deed dated February 4, 1869, a tract of land that appellant contends is included in the land in dispute. The following is a copy of said deed, to wit:

"This indenture, made the fourth day of February, in the year of our Lord one thousand eight hundred and sixty-nine, between James H. Slater, of Boise City, Ada county, and territory of Idaho, party of the first part, and E. J. Curtis, of the said Boise City, Ada county and territory, as aforesaid, the party of the second part, witnesseth: That the said party of the first part, for and in consideration of the sum of one dollar, lawful money of the United States of America, to him in hand paid by the said party of the second part, the receipt whereof is hereby acknowledged, has remised, released, and forever quitclaimed, and by these presents does remise, release, and forever quitclaim, unto the said party of the second part, and unto his heirs and assigns, all right, title, interest, present and prospective, to that piece or parcel of land situated in Ada county, I. T., and more particularly described as follows, to

wit: Bounded on the west by Dr. W. L. Thompson's land claim; on the south and east by J. H. Slater's land claim; on the north and east by Front street, Boise City; and on the south-west side of the road leading from Boise City, to Thompson & McClelland's Ferry, on Boise river, in said Ada county, and territory of Idaho, and containing ten acres of land, more or less. Relinquishing hereto unto the said party of the second part, his heirs and assigns, all and every claim, both in law and in equity, I have now or may acquire by reason of my pre-emption right or entry of any portion thereof, and to any part or parcel of said above-described land, which may be embraced, included, or covered by any patent I or my successors may obtain for said land and premises. Together with all and singular the tenements, hereditaments, and appurtenances thereunto belonging or in any wise appertaining, and the reversion and reversions, remainder and remainders, rents, issues, and profits thereof; and also all the estate, right, title, interest, and endowments property, possession, claim and demand whatsoever, as well in law as in equity, of the said party of the first part, of, in, or to the said premises, and every part and parcel thereof, with the appurtenances. To have and to hold, all and singular the said premises, together with the appurtenances, unto the said party of the second part, and to his heirs and assigns, forever. In witness whereof, the said party of the first part has hereunto set his hand and seal, the day and year first above written.

(Signed)    "JAMES H. SLATER.    [Seal.]"

E. J. Curtis took possession of certain land, including the land in dispute, under said deed, and held possession thereof until the fourth day of January, 1872, on which date he conveyed the same to John Lemp. Mr. Lemp testified on behalf of the appellant that, when he bought said land from Curtis, there was a house upon it, and a fence around the entire tract; that Lover's Lane bounded said tract on the south; and that it fronted north on Front street. John Lemp held possession thereof until the sixteenth day of June, 1884, when he conveyed the land in dispute to the Oregon Short Line Railway, and said company and its grantees have held possession of the

same until this suit was brought. Thus, it is shown that, under said deed, Curtis held possession of said land from the fourth day of February, 1869, until the fourth day of January, 1872, on which last-named date he conveyed said land to Lemp; that Lemp held possession of said land from January 4, 1872, to the sixteenth day of January, 1884, when he conveyed it to the Oregon Short Line Railway Company; that said company and its grantees had been in possession thereof until the commencement of this suit.

Appellant contends that its title and right to the possession of said land is substantially as above stated; while the respondent claims title and the right to the possession of said land under and by virtue of the following conveyances: From Davis to Slater. From Slater, by his attorney in fact, John McNally, to A. O. Miller, which deed is as follows:

"This indenture, made the eleventh day of November, in the year of our Lord one thousand eight hundred and seventy-five, between James H. Slater, of the city of San Francisco, state of California, party of the first part, and A. O. Miller, of Boise City, Ada county, Idaho territory, party of the second part, witnesseth: That the said party of the first part, for and in consideration of the sum of six thousand ($6,000) dollars, gold coin of the United States of America, to him in hand paid by the said party of the second part, the receipt whereof is hereby acknowledged, has granted, bargained, sold, aliened, remised, released, conveyed, and confirmed, and by these presents does grant, bargain, sell, alien, remise, release, convey, and confirm, unto the said party of the second part, and to his heirs and assigns forever, all the following described pieces and parcels of land, situated in Ada county, Idaho territory, to wit: Lots Nos. six (6) and seven (7) in section ten (10), township No. three (3) north, range two (2) east, of Boise meridian, the same being land pre-empted under laws of the United States, by the party of the first part, January 28, 1868. Also the following described piece of land, being a part of lot No. five (5) in section ten (10), township No. three (3) north, range two (2) east, of Boise meridian, commencing in the center of the road on southwest end of Ninth street, and southwest side of Front street, forty (40) feet south, sixty-five degrees east, from the

east corner of Slater's garden fence; running thence south, 35 degrees west, down center of the road between Davis and Slater's fences, to the east line of lot No. six (6) in section ten (10) ; thence north, along the east line of lot No. six (6), to Front street, of Boise City, I. T.; thence, along the southwest side of Front street to starting point—being the same land conveyed by T. J. Davis to the party of the first part, Sept. 2nd, 1869, which conveyance is recorded in the recorder's office of Ada county, I. T., in book three of Deeds, on page 653.  Excepting and reserving from said lots Nos. six (6) and seven (7), in said section ten (10), the following described piece of land, deeded by the said party of the first part to T. J. Davis, Sept. 2nd, 1869, which deed is recorded in the recorder's office of Ada county, I. T., in book three of Deeds, on pages 674 and 675, commencing at a point 72 rods and 28 links due east from the quarter post on the west line of section No. ten, in center of road between Slater's and Davis' fences, the point being south, thirty-five degrees west, from center of Ninth and Front streets, in Boise City, 77 rods and nine links from Front street; running thence south, one degree west, 50 rods and ten links, to Isaac's bridge; thence, up the meanderings of Boise river, to the southeast corner of lot No. seven (7) ; thence north, on line of lots Nos. six (6) and seven (7), to point in center of above-mentioned road; thence south, twenty-five degrees west, along center of road, to place of beginning.  Also excepting and reserving therefrom a piece of land sold to E. J. Curtis, by the party of the first part, February 4th, 1869, which conveyance is recorded in the recorder's office of Ada county, I. T., in book three of Deeds, on pages 432 and 433, bounded as follows: On the east by land of W. L. Thompson, on south and east by land of J. H. Slater, on north and east by Front street, on southwest by road leading to Thompson & McClelland's Ferry, containing ten (10) acres of land.  Also excepting therefrom twenty acres of land sold by party of first part to W. L. Thompson, July 13th, 1869, which conveyance is recorded in the recorder's office of Ada county, I. T., in book 3 of Deeds, on pages 651 and 652. Also excepting and reserving therefrom a piece of land conveyed by the said party of the first part to John McClelland,

September 1st, 1872, which conveyance is recorded in the recorder's office of Ada county, I. T., in book four of Deeds, on page 623. And excepting and reserving therefrom four acres of land sold by the party of the first part to the Turnverein Society of Boise City, July 17th, 1873, which deed is recorded in the recorder's office of Ada county, I. T., in book six of Deeds, on page five; also, a right of way to the same, in the same conveyance. Together with all and singular the tenements, hereditaments, and appurtenances thereunto belonging or in any wise appertaining, and the reversion and the reversions, remainder and remainders, rents and issues and profits thereof; and also all the estate, right, title, interest, homestead, pre-emption, property, possession, claim, and demand whatsoever, as well in law as in equity, of the said party of the first part, of, in, or to the said premises, and every part and parcel thereof, with the appurtenances. To have and to hold all and singular the said premises, together with the appurtenances, unto the said party of the second part, and to his heirs and assigns, forever; and the said party of the first part and his heirs, the said premises, in the quiet and peaceable possession of the said party of the second part, his heirs and assigns, against the said party of the first part and his heirs, and against all and every person and persons whomsoever lawfully claiming or to claim the same, shall and will warrant and by these presents forever defend. In witness whereof, the said party of the first part has hereunto set his hand and seal, the day and year first above written.

(Signed)   "JAMES H. SLATER,   [Seal]
                         "By JOHN McNALLY,
                                 Attorney in Fact."

And, finally, deed from A. O. Miller to J. W. Brose, the respondent, dated December 20, 1890.

The plaintiff testified on his own behalf, and, in regard to taking possession of said land, he said: "I went into the premises repeatedly immediately after the transfer of the deed, by passing and repassing over it; but I think that to do any work in the premises was in January, 1891. I never conveyed the premises, nor freely surrendered possession thereof, to any person." And on cross-examination he testified as follows: "I

went on the premises for the purpose of digging a foundation for a house. I went on one day, dug the trench to the north; the next day, the one toward the east; and the third day, if I remember right, I went to dig again. It was about eighteen inches deep and two feet wide. That is all that I did there at any time. . . . . I first ascertained that anyone claimed the premises the day after I was building the last trench. Two teams came inside the inclosure, tore down the fence, and proceeded to construct a grade. I ordered them off, and they went away, I understood. They reappeared. I again ordered them off, and they instructed to go and see Mr. Bancroft, I think, was the gentleman's name; that they were instructed to construct that road." The complaint was filed on July 13, 1893, about two years and a half after the trenches were dug by the plaintiff, as stated in his testimony, and after the railroad grading was begun on said land. Numerous errors are assigned, but, in our view of the case, it is not necessary for us to pass upon all of them.

In support of the allegations of the complaint, the plaintiff tendered evidence of the title on which he relied, which is as follows: United States to Thomas Davis; Thomas Davis to James H. Slater; James H. Slater, by his attorney in fact, McNally, to A. O. Miller; A. O. Miller to J. W. Brose, the plaintiff. The appellant claims title by prescription, and also by deed from Davis to Slater; James H. Slater to E. J. Curtis; E. J. Curtis to John Lemp; John Lemp to Oregon Short Line Railway; Oregon Short-Line Railway and grantees to Boise City Railway and Terminal Company, appellant. The evidence clearly established the adverse possession of said land in Curtis and Lemp from 1869 to 1884, a period of fifteen years. Title by prescription was thus acquired by Lemp in case his paper title was not valid. From 1869 to May 22, 1881, no payment of taxes was required in order to constitute an adverse possession to real estate in this (then) territory. As regards the paper title, the real contention is over the deed from Slater to Curtis. It is admitted that the description of the land conveyed by that deed is ambiguous. And respondent contends (1) that it does not convey the land in dispute; (2) that, if it did convey the land in dispute, it, being a quitclaim deed, did not convey the

708            Brose *v.* Boise City Ry. etc. Co.            [Sup. Ct.

Opinion of the Court—Sullivan, C. J.

title to said land in dispute, for at the date of the Curtis deed
the legal title to said land was in Davis by virtue of his pre-
emption entry, and that he thereafter conveyed it to Slater, and
Slater conveyed it to A. O. Miller, and Miller to plaintiff. The
Curtis deed is set out in full above. By it Slater remised, re-
leased, and forever quitclaimed unto the said Curtis and his
heirs and assigns all the right, title, and interest, "present and
prospective," to the land described in said deed, and relinquishes
to said Curtis all and every claim both in law and in equity
that he then had or should acquire by reason of the grantor's
pre-emption right or entry of any portion of the said land which
should be embraced, included, or covered by any patent he or
his successors might obtain for said land and premises.

Ordinarily, a quitclaim deed does not .convey the after-ac-
quired title of the grantor; but, where language is used in a
quitclaim deed that clearly indicates that it was the intention
of the grantor to convey the after-acquired title, that effect
should be given to the instrument. The intention of the parties
should be carried out. In the deed referred to, the grantor
states that it is his intention to convey "all the right, title, and
interest," "present and prospective," to the land conveyed, and
relinquishes all and every claim, both in law and equity, that
the grantor then had or should acquire by reason of his pre-
emption right or entry. If Slater acquired the tract of land in
dispute by reason of his said pre-emption entry, and said land
is included in the Curtis deed, it was conveyed to Curtis there-
by. The deed from Slater to Miller, whereby he conveys to
Miller parts of said lots 5, 6, and 7, contains certain exceptions,
one of which is as follows: "Also excepting and reserving there-
from a piece of land sold to E. J. Curtis by the party of the
first part, February 4, 1869, which conveyance is recorded in
the recorder's office of Ada county, Idaho Territory, in book 3
of Deeds, on pages 432 and 433, bounded as follows: On east by
land of W. L. Thompson, on south and east by land of J. H.
Slater, on north and east by Front street, on south and west by
road leading to Thompson & McClelland's Ferry, containing
ten (10) acres of land." The deed from Slater to Miller, re-
spondent's grantor, thus excepts from its operation the land

conveyed to Curtis. It is established beyond a doubt that the road leading from Thompson and McClelland's Ferry connected with or intersected said Front street at a point where said street is intersected by Tenth street, and that the land conveyed by Slater to Curtis, was bounded on the northeast by Front street, and on the south by said road leading to the ferry. While it is true, in the description of the land as given in the Curtis deed it is stated that the land is on the southwest side of the road leading from Boise City to Thompson and McClelland's Ferry, on Boise river, that call in the deed must be rejected, because it is impossible. But the other calls are sufficient to identify the land, and it can be identified with the means authorized to be used in such cases. It will be noted by an examination of the clause in the Miller deed excepting the land conveyed to Curtis from its operation that a description of the land conveyed to Curtis is there given, and it is there stated that said land is bounded on the southwest by the road leading to Thompson and McClelland's Ferry. And it is also shown by the evidence that Lover's Lane is the road known as the road to Thompson and McClelland's Ferry since 1864. Thus, Miller and his grantee, by the terms of the Slater deed to Miller, had notice that the land conveyed to Curtis by Slater was bounded on the southwest by said road. The ambiguity in the description given in the Curtis deed was not sufficient to invalidate it. But, rejecting that call, the other calls are sufficient to identify said land. The construction put upon the deed by the parties themselves is entitled to great weight. Curtis, under his deed, went into possession of the land in dispute in 1869, and held possession until 1872, when he conveyed it to John Lemp. Lemp went into possession, and held possession thereof until in 1884, when he conveyed the same to the Oregon Short-Line Railway Company; and that company and its grantees have held possession thereof from 1884 until this suit was brought, in 1893. For twenty-one years their possession was not disturbed nor disputed.

There is no substantial conflict of evidence upon the issues involved in this case. The deed from Slater to Curtis conveyed the subsequently acquired title of Slater to Curtis. The appellant has the legal title to the land in dispute, acquired by

conveyances from Davis to Slater, Slater to Curtis, Curtis to Lemp, Lemp to the railroad company, and through certain grantees of said company. It and its grantors have had continuous, open, and notorious adverse possession of said land in dispute, claiming the title thereto, for more than twenty years, commencing in 1869 down to 1891, and from 1869 to May 21, 1881, when, under the laws of this (then territory) state, it was not necessary to show payment of taxes to establish adverse possession. Therefore, conceding that appellant's paper title is not valid, it has acquired a title by prescription. Inasmuch as the evidence is before us, and it is amply sufficient to establish the title to said land, and the right to the possession thereof, in the appellant, this court would not be justified in sending the case back for a new trial. The judgment of the court below is reversed, and the cause is remanded, with instructions to the trial court to set aside the judgment heretofore entered, and enter judgment in favor of the appellant in conformity with the views expressed in this opinion. Costs of the appeal are awarded to the appellant.

Huston and Quarles, JJ., concur.